IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN S. SMITH<br>48 MILL ROAD<br>MILLVILLE, PA 17846 | : | CIVIL ACTION |
| Plaintiff, | : | No. |
| v. | : | JURY TRIAL DEMANDED |
| LHC GROUP, INC.<br>901 HUGH WALLIS RD SOUTH<br>LAFAYETTE, LA 70508 | : | (Electronically Filed) |
| Defendant | : | |

## COMPLAINT

The Plaintiff, Susan S. Smith, by and through her counsel, Koff, Mangan, Vullo & Gartley, P.C., hereby complains of the Defendant, LHC Group, Inc. (hereinafter "LHC" or "Defendant"), as follows:

## I. Introduction

1. Plaintiff, Susan S. Smith (hereinafter "Plaintiff" or "Smith"), initiates this action to seek redress against the Defendant, her former employer, for unlawful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA").

## II. Jurisdiction and Venue

2. This Court has personal jurisdiction over the Defendant because the Defendant's contacts within this state and this Judicial District are sufficient for the exercise of jurisdiction over the Defendant.

3. The subject-matter jurisdiction of this Court is based upon federal question jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331 because this action arises under the laws of the United States and pursuant to the provisions of 28 U.S.C. §1367 as to Plaintiff's state law claims under the PHRA, by means of supplemental jurisdiction.

4. Venue is proper in this Judicial District because all or a substantial part of the events and omissions giving rise to the claims occurred in this Judicial District and because Defendant conducts business in this Judicial District.

## III. Parties

5. Plaintiff Smith is an adult female currently residing at 48 Mill Road, Millville, PA 17846, and is over the age of 40.

6. At all relevant times, Defendant LHC has been and is a for-profit business corporation organized under the laws of the State of Delaware, with a principal place of business located at 901 Hugh Wallis Road South, Lafayette, LA 70508.

7. At all relevant times, Defendant LHC was in the business of providing in-home health and hospice services to patients dealing with injuries, illnesses or chronic conditions at various locations throughout Pennsylvania, and did so through office locations that included Bloomsburg, Northumberland and Lewistown, Pennsylvania.

8. At all relevant times, Defendant acted or failed to act through its agents, employees and servants, each of whom was in the scope of their employment with Defendant.

9. At all relevant times, Defendant employed at least twenty (20) employees and Defendant was and is an "employer" within the meaning of the ADEA and the PHRA.

## IV. Administrative Requirements

10. Plaintiff has complied with all statutory prerequisites to the filing of this action by timely filing a complaint/charge with the Pennsylvania Human Relations Commission ("PHRC"), which complaint/charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff has exhausted all administrative remedies available to her, and all necessary EEOC and PHRC prerequisites to the filing of this Complaint have occurred and been satisfied.

## V. Statement of Claims

12. In or about July of 1992, Plaintiff became a full-time hospice nurse for Columbia-Montour (Counties) Home Health and Hospice (hereafter, "CMHH&H"), in the Commonwealth of Pennsylvania. From 1993 to 1998, she was the Assistant Hospice Director and in 1998, she became the Director of Hospice for that agency.

13. As the Director of Hospice for CMHH&H, Plaintiff was the full-time manager of CMHH&H's hospice program, which had one office in Bloomsburg, Pennsylvania.

14. In or about 2012, CMHH&H was integrated into Geisinger Home Health and Hospice ("GHH&H"), which was also located in Bloomsburg, Pennsylvania, and which was eventually relocated to Danville, Pennsylvania.

15. On or about April 1, 2019, CMHH&H was merged into a joint venture between GHH&H and Defendant LHC.

16. On or about April 1, 2019, Plaintiff became a full-time employee of Defendant LHC, which retained her as a full-time Executive Director managing three LHC offices in Pennsylvania, including the Bloomsburg office that she already managed, as well as an office in Northumberland and one in Lewistown.

17. During the period April 1, 2019 through May, 2020, Plaintiff's immediate supervisor was Wendy Dias (approximate age 45-50), who was LHC's

Area Vice President for its East Coast hospices. Ms. Dias reported to Dana Foreman (approximate age 45-50), who was LHC's Area President for its East Coast hospices.

18. As Executive Director, Plaintiff addressed numerous obstacles during the first year (2019 – 2020) of the joint venture, including the fact that LHC's Northumberland office was in total disarray, requiring extensive cleaning, that its Lewistown office had no office space, which had to be secured and prepared for staff, and that its Bloomsburg office had to be relocated to Danville.

19. In March 2020, Ms. Foreman and Ms. Dias advised Plaintiff of a local LHC restructuring and that LHC intended to hire an Executive Director for two of the three offices that Plaintiff then managed, the Northumberland and Lewistown offices.

20. During this discussion, Plaintiff learned that LHC hired Kristen Marcheski (approximate age 35) to replace her as Executive Director for these two offices. Plaintiff was to remain as the Executive Director of the Bloomsburg office, but later learned that Ms. Marcheski would actually become the "Area Executive Director" over all three offices and be Plaintiff's supervisor. This was a demotion for Plaintiff.

21. After only a few months as her supervisor, Ms. Marcheski evaluated Plaintiff's job performance on August 24, 2020 and gave Plaintiff multiple "Below Expectations" ratings.

22. Plaintiff disputed Ms. Marcheski's evaluation as many of the issues identified were unfounded, unwarranted and/or not true. Further, that evaluation failed to consider Plaintiff's many administrative and managerial skills which had enabled her to develop and elevate the three offices under her management from "red" to "green" in LHC's mock surveys.

23. Contrary to the performance evaluation ratings given to Plaintiff by Ms. Marcheski, LHC's Bloomsburg location, under Plaintiff's management, consistently exceeded quality levels.

24. In her Executive Director position, Plaintiff properly supervised her staff, volunteers and all patient care, and was always available to do whatever needed to be done in the workplace.

25. Plaintiff's staff complained to Plaintiff about working in a toxic environment created by Ms. Marcheski and feeling harassed, frustrated and disrespected by Ms. Marcheski.

26. In September 2020, Plaintiff notified Ms. Dias and Ms. Foreman of issues with Ms. Marcheski's performance, including her poor treatment of Plaintiff's staff.

27. On or about October 9, 2020, despite the high-quality performance level of LHC's Bloomsburg office under Plaintiff's management, Ms. Marcheski

presented Plaintiff with a corrective action plan for purportedly not meeting expectations for an Executive Director.

28. Even though Plaintiff felt that the corrective action plan was unnecessary and unwarranted, she dutifully responded to it and complied with all of the requirements of the plan.

29. After submission of her response to and compliance with the corrective action plan, Plaintiff never received any written response or acknowledgement from LHC that she had failed to successfully complete the corrective actions, and she continued to perform her job duties for LHC's Bloomsburg office.

30. Additionally, the Patient Care Manager ("PCM") for the Bloomsburg office became disgruntled working with Ms. Marcheski and in late November 2020, left her job so that Plaintiff then had to complete those PCM duties as well as her own Executive Director duties. Another PCM was hired in mid-December 2020 but left on March 2, 2020, again necessitating that Plaintiff perform the PCM role full-time in addition to her Executive Director duties.

31. Also, when LHC's Northumberland office was without a designated on-call nurse, from October 2020 to March 2021, Plaintiff made herself available to make visits associated with that office five nights per week. Most of these visits were made during evenings and on weekends, during times that Plaintiff was not required to be in the Bloomsburg office working as Executive Director, and Ms.

Marcheski knowingly accepted her offer to assist with this additional nursing coverage.

32. The Pennsylvania Department of Health ("DOH"), which surveys hospices every three years, completed a survey of LHC's Bloomsburg, Northumberland and Lewistown offices in February of 2021. The majority of patient and employee charts, administrative binders and field staff visits reviewed by the DOH surveyor came from the Bloomsburg office that Plaintiff supervised, and the survey resulted in "No Deficiencies."

33. On April 16, 2021, Plaintiff was called into a meeting with Ms. Marcheski, Ms. Foreman and an LHC Human Resources representative, at which point they advised Plaintiff that she was being dismissed for allegedly failing to perform to the level of an Executive Director. They indicated that that dismissal was effective April 25, 2021, unless Plaintiff accepted another demotion to a full-time Field Case Manager, a hospice nurse position, at a substantial reduction in salary.

34. After communications with LHC's Human Resources Department, Plaintiff advised LHC on April 23, 2021 that she would not be accepting the demotion to Field Case Manager at the substantially reduced salary offered to her.

35. Defendant then terminated Plaintiff, who at that time was 67 years old, effective April 26, 2021.

36. As a result of Defendant's actions as aforesaid, Plaintiff has sustained injury and incurred damages in the form of lost wages, loss of employment opportunities, lost benefits, costs associated with health insurance, including vision and dental coverage for her and her husband, physical illness, damage to reputation, humiliation, embarrassment, inconvenience and serious emotional pain, distress, and anguish.

37. As a result of Defendant's actions as aforesaid, Plaintiff has also incurred attorneys' fees and costs.

## COUNT ONE

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

38. Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 37 inclusive of this Complaint.

39. Plaintiff is over the age of 40 and therefore is within the class of persons protected by the ADEA.

40. Defendant, through its agents, employees, and representatives, acting within the scope of their employment, engaged in unlawful discrimination based on age in violation of §623(a)(1) of the ADEA. These practices and conduct included, but were not limited to, the development and implementation of a discriminatory and exclusionary restructuring plan in order to replace Plaintiff with a substantially younger individual, the false, unjust and heightened criticism of her job

performance as an Executive Director, and the ultimate termination of Plaintiff's employment as of April 26, 2021, all based on Plaintiff's age.

41. Defendant treated Plaintiff in a manner less favorable than it treated similarly situated younger employees, in that it held Plaintiff to higher performance standards and subjected Plaintiff to adverse employment actions because of her age.

42. The effect of the practices and conduct complained of has been to deprive Plaintiff of equal employment opportunities and has otherwise adversely affected her status as an employee because of her age.

43. Defendant used the false and unsubstantiated allegation of unsatisfactory performance as a pretext for unlawful discrimination on the basis of age in forcing Plaintiff out of the Executive Director position and discharging her on April 26, 2021.

44. Defendant engaged in said unlawful acts and terminated Plaintiff's employment in violation of and with intentional, knowing, and/or reckless disregard of the requirements of the ADEA.

45. Defendant's violations were willful within the meaning of the ADEA, thereby entitling Plaintiff to liquidated damages as provided within said Act.

46. As a direct and proximate result of the foregoing conduct, Plaintiff suffered the damages set forth herein.

WHEREFORE, the Plaintiff, Susan S. Smith, respectfully requests that this Court enter judgment in her favor and against the Defendant, and enter an Order providing that:

(a) Defendant institute and carry out policies, practices and programs which prohibit discrimination in employment based on age;

(b) Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest on said amounts from the date of Plaintiff's termination;

(c) Defendant pay Plaintiff's reasonable attorneys' fees and costs incurred in this action;

(d) Defendant pay Plaintiff liquidated damages as provided for in the ADEA; and

(e) Plaintiff be granted such further relief as the Court deems necessary and proper.

### COUNT TWO
### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA)

47. Plaintiff incorporates herein by reference and makes a part hereof Paragraphs 1 through 46, inclusive, of this Complaint.

48. The conduct of Defendant in developing and implementing a discriminatory and exclusionary restructuring plan in order to replace Plaintiff with

a substantially younger individual, the false, unjust and heightened criticism of her job performance as an Executive Director, and the ultimate termination of Plaintiff's employment as of April 26, 2021, all based on Plaintiff's age, violated the PHRA, 43 P.S. § 955(a).

49. As a direct and proximate result of the foregoing conduct, Plaintiff suffered the damages set forth herein.

WHEREFORE, the Plaintiff, Susan S. Smith, respectfully requests that this Court enter judgment in her favor and against Defendant LHC, and enter an Order providing that:

(a) Defendant institute and carry out policies, practices and programs which prohibit unlawful discrimination and retaliation for asserting protected rights;

(b) Defendant pay Plaintiff damages representing past and future lost wages and benefits, together with pre-judgment interest on said amounts from the date of Plaintiff's termination;

(c) Defendant pay Plaintiff compensatory damages;

(d) Defendant pay Plaintiff's reasonable attorneys' fees and costs of litigation; and

(e) Plaintiff be granted such further relief as the Court deems necessary and proper.

**Jury Trial Demanded**

The Plaintiff, Susan S. Smith, requests a trial by jury of each issue triable of right by a jury.

> Respectfully submitted,
>
> KOFF, MANGAN, VULLO, & GARTLEY P.C.
>
> /s/ Cynthia R. Vullo
> Cynthia R. Vullo, Esquire
> Atty. I.D. No. 45720
> cvullo@kmvglaw.com
> 1065 Highway 315, Ste. 302
> Wilkes-Barre, PA 18702
> (570) 718-1700
> (570) 718-1701 (fax)
>
> Attorneys for Plaintiff, Susan S. Smith

W:\Cindy\Smith Susan\Lawsuit\Complaint.docx